Good morning, everyone. Welcome to today's Ninth Circuit Oral Arguments. I'm Judge Sanchez and I'm pleased to welcome Judge Smith and Judge Mendoza with me today. We have several cases that have been submitted and I'll run through these very briefly. Weir v. Garland 22-1710. Corona v. Garland 23-106. Underhill v. Kijikazi 22-36033. Knox v. White 23-35078. And our first argument is Jaswinder Singh v. Garland case number 23-95 and counsel may approach. Is that all right? Good morning, your honors. Alexandra Jacobs for petitioner Jaswinder Singh. I'd like to reserve five minutes for rebuttal. I'd like to also begin with discussing the broader due process issues and then move to a more specific discussion of the case itself. When you start discussing the broader due process issues, did you raise this issue? I received an order from the court asking. From us? Yes. Okay, so but you didn't raise it, right? No, I didn't. Why? I thought that it was a stronger argument to focus on the way in which the case as the black letter law states is not properly applied here. I didn't. So if you didn't raise it and we hadn't raised it, would it have been waived? It would, your honor. So I guess my big problem here is why should we really get on it if you didn't think it was that important? Well, my apologies for not being bold enough to challenge this case at the BIA, but I quite agree with the court. There are some very concerning due process implications, which I would be happy to discuss. Yeah, well, that's where you are next. So I just want to go right off the bat. It wouldn't be my normal to go into something you didn't yourself put together. I understand, your honor. Thank you for the opportunity to discuss it anyway, and I will certainly take note on that in the future. So since we're on the topic, the government's increasing use of matter of RKK to introduce extra proceedings declarations is deeply concerning. Congress has recognized that due process and removal proceedings includes the right to a full and fair hearing. This also includes the opportunity to confront witnesses against you. Generally speaking, the government is required to make a reasonable effort to afford immigrants that opportunity. However, where the Department of Homeland Security submits redacted declarations from other applicants, there's no indication of how those declarations were selected, who the declarants are, how the declarations were prepared by whom, whether the declarants are found credible, and many other concerns. The need for cross-examination becomes even more crucial. As recognized in the Second Circuit case of Mei Chia Yee, which RKK relied on to reach its findings, in circumstances like these, there's no way of knowing whether multiple applicants may have inserted truthful information into a similar template, whether different applicants may have employed the same scribe, whether one or more applicants plagiarized the truthful statements of another, whether it's similarities or translations. When the Second Circuit did all of that, isn't that when the BIA basically adopted the Second Circuit's safeguards? They more or less adopted it, yes, but neither Mei Chia Yee nor RKK considered the due process implications, and there are some important differences. Well, when you have to, on the record, give the applicant meaningful notice of the significant similarities, you have to give the applicant reasonable opportunity to explain the similarities, and then you have to consider the totality of the circumstances making the credibility determination, doesn't that do exactly what the Second Circuit suggested? I don't think so, and I don't think it does what the BIA and RKK suggested either. The Ninth Circuit has recognized that the opportunity to confront witnesses against you is especially important where the witness may not be telling the truth. The entire premise of introducing these declarations is that one or more of the declarants may not be telling the truth. Well, but if we look at 8 U.S.C. 1158b1b3, that's where in the statute it tells us how to make a credibility determination. That's the very statutory language that tells you what you need to do. Now, if I look at those in 1158b1b3, this is evidence challenging the plausibility of the applicant's story, and it's consistent with the factors that are in the statute. I don't believe that that statute is meant to abrogate other due process rights. In 8 U.S.C. 1229a, Congress explicitly stated that an immigrant and removal proceeding should have opportunity to examine the evidence against them and to cross-examine witnesses. Let me ask you about that, though. So, at the IJ level, the petitioner was asked to distinguish, I guess, against these other 20 or so applicants. What information was provided to the petitioner to defend against or respond against the similarities that were mentioned? The petitioner was provided with a number of redacted declarations, which the government alleged were substantially similar to his declaration. The names, the origin of the declarants, many, many details are redacted. Were the dates provided? The dates? Yes. I don't think so. I'd have to double-check, but I'm pretty sure that the dates... The names of the attorneys? No. Okay. Now, I'm just looking at the many things that I might look at here. If I can use the country conditions to challenge one's credibility, how is this any different from that? Because my law says that I can use the country conditions to challenge the credibility. Sure. So, this didn't... So, how is this different than that? This is just a general overall statement, if you will, of what people have said in the past in different places, and they seem to be the same. Country conditions is a general overall, and if I can use that to challenge the credibility, why is this different? This use of extra proceedings declarations can be evidence has been admitted without the ability to cross where the documents were prepared by a neutral party in the ordinary course of... You're not answering my question. Country conditions is exactly the same kind of evidence. I disagree, Your Honor. My point is that for country conditions evidence, it tends to be published news articles, things prepared by governmental agencies. So, where governments are prepared by a neutral party in the ordinary course of operations, such as there's a case where a DHS public record was admitted or a State Department record, the concerns are different. As I mentioned, the opportunity to confront is especially important where the witnesses may not be telling the truth, where you're concerned that one or more... Didn't the Second Circuit raise these very concerns in Meng Chieh, where it's hard to discern the difference between different affidavits and different proceedings, and that cautionary language in RKK comes from the Second Circuit. Where do you think the BIA strayed in not applying enough caution here? So, in RKK, an important distinction is that there was opportunity to cross. The additional extra proceedings declaration was the declaration of the respondent's brother who testified at trial. They waived confidentiality, and the BIA and RKK explicitly said that the confidentiality issue and the right... These issues were addressed because the confidentiality was waived, and they explicitly did not address what procedural protections would be sufficient without such a waiver, as is the case here. So, I think that the increasing use of RKK to just rampantly introduce redacted declarations without considering confidentiality or right to cross, neither Meng Chieh nor RKK have addressed due really weigh heavily on the fact that the affidavits had a lot of linguistic similarities. Correct. Grammatical structure, identical phrases, or strikingly similar ways of describing certain events. And that seems to be the same thing in Meng Chieh and RKK, de Honza in the First Circuit, way... I think it's weighed. Should RKK be read to indicate that you have to have some of these linguistic issues in addition to other factual similarities in the way that it's being applied? I think so. I think absolutely, yes, it should be. I don't think that... I mean, turning to the instant case, there are very few, if any, language or grammatical similarities between the petitioner's declaration and the extra proceedings. The extra proceedings do have many language and grammatical commonalities, sometimes stating... The government concedes that in their brief, that there aren't those similarities, but that the narrative, I think, is what they say is similar. And so, Your Honor, respectfully, I think that it doesn't make sense where there's no indication of verbatim plagiarism. You know, the fact that similarly situated people have suffered similarly situated persecution, or at least assert that they have, I think that just strengthens the argument of credibility rather than undermines it. Well, let me ask you another question. We use this same kind of evidence to evaluate whether one has filed a frivolous application. Why is this any different than that? Neither... So I believe there were extensive footnotes in Meng Chieh about that not having been entering a frivolous... But I'm just suggesting to you, I use this when I'm looking to determine whether this is a frivolous application on appeal. I allow the IJ to look at it. I allow the BIA to look at it. Why is this any different than that? Respectfully, Your Honor, that's outside of the case that we're considering, and so I'm not properly prepared to respond. I wish that... I don't think that's outside the case. You're arguing me. Now I'm supposed to undo something that three other circuits have said is fine. Two others have said it's a close fine, and I have, on eight times, in eight unpublished decisions, said it's just fine. And now you're arguing I ought to undo this, and you didn't argue it in the first place. And so I'm arguing... I'm not really arguing. I'm really trying to see if I can do this in a frivolous application, make the same kind of... They can make that same kind of determination, and I have to give them credit for doing it. Why can't I do it here? I don't think you should be able to. I don't think they should be able to, and... Well, we've said that. So... I mean, all I'm trying to do is get you to think about the broad perspective of what you're arguing here. If we were to overturn this, we're really fighting ourselves with three other circuits for sure, and maybe two others. And we, in our own precedent, eight times have said it's okay. And now you're really saying undo it, and then I'm saying, well, if that's really what she's saying, what about the country conditions? What about the frivolous application? Those are all things that I'm going to have to look at the same kind of things. Yes, Your Honor. I think that... So perhaps I can narrow this a little bit. I think that it is the right thing. I think that there are clearly rights laid out by Congress that an immigrant has in removal proceedings, and that this practice violates them. And so I think it's the right thing to do to not allow it to take over rampantly, which it has been seeming to do on the West Coast. But in this case, and in many cases, but not any of the other cases in the Ninth Circuit, RKK... The standard for a violation of due process is that the proceedings were rendered so fundamentally unfair that they were prevented from reasonably presenting their case, and then prejudice. And so here, because RKK is the only valid basis for the adverse credibility finding, there's clear prejudice. And so perhaps there's room for it in combination. Is that what you're arguing? If it's the only, it's a problem? I think that it is insufficient on its own. I think that perhaps when taken with many other... Judges are required to look at the totality of the circumstances when making an adverse credibility determination. And looking at... Can I... Sorry to interrupt, but let me circle back to my earlier point. The other circuits all relied on the fact that there were strikingly similar phrases, grammatical errors, the way that the affidavits were themselves written. That's, to me, a distinction between this case and virtually every other circuit that I've seen handle that. In the Sixth Circuit, it was an entire paragraph that was copied verbatim. In Ming Che Yi, there was... Or in the First Circuit, there was one about a tennis ball being used, wires to hit someone. There's a distinction. What seems unique about this case, in my view, is that you've taken... The government has taken these generalized categories, and what they say is similar. They reported to the police. The police refused to comply and said, well, that's strikingly similar because we've checked off 11 boxes in a row. And so therefore, we can call someone incredible even when all the other corroborating testimony supports what Mr. Singh has said. Isn't that a distinction between what's going on here versus every other circuit? I absolutely agree. I absolutely agree. And even not touching... Isn't this a substantial evidence standard? Sure. And if, in fact... I came up with 21 similarities. He's got 11 over here. If, in fact, there are 21 similarities between the affidavits, isn't that substantial evidence enough to support the IJ decision? I don't think that the similarities that the government asserts in their answer brief are the kind of similarities, again, that were contemplated in MHIE or RKK. There are more generalities about the facts of the case, which, again, presumably most of these cases are occurring in one state in India with one or two different minority political parties. The kinds of persecution, the kinds of activities that these parties perform, the kinds of responses... But we don't know because they're redacted. We can't be sure. Well, I mean, just looking at it, it would seem to me the more unique the situation, one might suggest the less similarities that might be required. But if it's not unique, then it would seem to me that it would require more similarities, and that's why the government has come up with so many here. But as has been discussed, they didn't come up with similarities in language. In RKK, they pointed to things like a misspelling of believe that was the same or phrases that were... I believe the quote was, I was very much astonished on their allegation, particular terms of phrase that were very distinct. In MHIE, the judge recognized 23 language and grammatical similarities that occurred in the same order in both declarations. That's not the case here at all. If you compare the declarations, but yes, at minimum, RKK was dreadfully misapplied in the instant case. I was looking at the government's chart at AR 619 as the basis, I think, that the IJ relied on for these similarities. And if you were to add published decisions from our circuit, Singh versus Garland, Singh versus Whitaker, you would find at least 10 or 11 or 12 checked boxes in our own published decisions where there was past persecution found. And so the concern I have is that there are these generalities, some of which seem to presuppose an asylum claim. Went to the police, the police refused to help. And so the government was essentially unable or unwilling to suppress third party violence. What is the standard that the BIA uses to decide whether something is similar enough? Is it, it might understand that it's just checking off enough general boxes or is there something more specific than that? So I believe the BIA and RKK held that it requires a substantial number of instances where the same or remarkably similar language is used to describe the same kind of incident or encounter. So they are thinking about are the description, are the events being described similar? That is taken into consideration, but they don't just consider that. They also require the same or remarkably similar language. And that's simply not the case here. I, your honors, I see that I've vastly exceeded my time. Should I? Yeah, I think we'll, we'll, we'll hear from opposing counsel and we'll give you a little time for rebuttal. Thank you. Thank you. Good morning, your honors. May it please the court. Roberta Roberts on behalf of the United States Attorney General. This case is about upholding the integrity of asylum proceedings and tackling fraud without trampling due process. The agency here recognized this delicate balance and followed an appropriate framework to identify indicators of incredibility while protecting the due process rights of the applicant. Ms. Roberts, could I ask you to start with this concern that I've raised, whether RKK allows the, the BIA to consider only factual similarities between events and not the way that those events are described in, in different affidavits? Can you, can you start there please? Yes, your honor. In RKK, it mentions that for example, at page 662 of RKK, it says that in the context of an overall asylum claim, distinct language that was used or unique factual circumstances were repeated without reasonable explanation. That is an example of where factual similarities can be considered. But, but that phrase is within the paragraph that's talking about a substantial number of instances where the same or remarkably similar language is used. And right after that sentence, it says, see, for example, Dihonzai versus Holder, the first circuit case, and the parenthetical there is rejecting the applicant's explanation that language describing a beating with a bundle of wires attached to a tennis ball, which was virtually identical to the cousin's statement was quote, mere coincidence. Again, the analysis just seems to be tethered to the concerns that were raised in Ming Chai Yi and in other cases that it's about suspiciously similarly written affidavits between seemingly unrelated proceedings. When you start to force it into just general categories of went to police, police didn't help, beaten by sticks or punched or kicked or threatened, these broad categories, aren't we getting away from, from what is actually a tenable way to figure out what's similar? Your Honor, here, it's not just based on generalized similarities. For example, in all of the submitted affidavits, there are exactly two attacks. That is strikingly for 20 people, there are always attacked exactly two times. Why not just once? Why not three times? Why is it always two times? Another similarity that's present in a vast majority of these declarations are that they are, for the first attack, they're attacked while hanging posters, either for a blood donation drive or an eye camp. Why is it always an attack while they're hanging posters? Why not an attack while they're walking somewhere else? I mean, there are several cases where the attacks come from passing out leaflets to man party members as well. I, you know, you, you can fit these general descriptions of things that have happened in many different ways and even group a bunch of them together and then numerically say, well, this must be similar. But how do you account for the fact, for example, that in this case, there are a number of things that were described that are dissimilar than what happened here, that a person, that Mr. Singh had a gun held to his head and someone threatened him, threatened to shoot him, that the INC people went to his house two or three or four times in order to, to try to look for him, that he was on 20 to 25 days of bed rest from his, from his medical injuries. There are a lot of dissimilarities that occurred in Mr. Singh's example that aren't reflected in this chart. And yet somehow, because he had gone to the police after the first attack, we're to presume that it's suspicious. I, I'm having a hard time seeing how one can distinguish between a truthful declarant versus someone that might be among others getting persecuted in a particular region because of his separatist beliefs. That is where step three of the matter of RKK framework comes in, considering the totality of the circumstances, which is what the agency did here. In fact, the adverse similarities, but also looking at the petitioner's evasive testimony about how he entered the country. So it's not just about looking at what could be characterized as generalized similarities, but looking at the entire case as a whole, which includes the similarities, how the petitioner testifies, their evasiveness, and then also what is included in the country conditions evidence. And in this case, country conditions evidence does not say that there is widespread persecution of man party members or of Sikhs or of separatists. So looking at the case as a whole in the totality of the circumstances, which is required as part of the matter of RKK framework, that comports with Just a question. You do concede that the language used in Mr. Singh's case is not similar to those other 20 affidavits, correct? Yes, Your Honor. But to point the court's direction to a case that the court decided in May of this year, Singh v. Garland, in that case, it was a similar situation here where the declarations did not have the same type of grammatical or typographical similarities that may have been seen in other cases. But in this particular Singh case, out of this circuit, the Mr. Singh in that case argued only that the similarities between his case and the other proceedings at issue are insufficient to warn an adverse credibility finding because his declarations, language and grammatical structure are not identical to those declarations. Here though, in your opening brief, you say that so long as the narrative is similar, the narrative, that's what you said in your opening brief. Is that going to be the rule here? That so long as the narrative is similar, then we're going to be able to discount their or we're going to make a credibility finding? Narrative is but one aspect of making the finding. Again, there is the step three, the totality of the circumstances. So if there is the narrative and looking at the entirety of the evidence of record, then yes, that can be sufficient to make the adverse credibility determination. Well, the border crossing was the single instance other than the, it seems as if the finding of adverse credibility was largely based on Mr. Singh not being able to explain to the IJ satisfaction why his circumstances were not that similar to the others. And then we have the border crossing, which I believe he explained that he didn't understand. He was told by someone else that he should jump the fence and then would be apprehended. Why wasn't that a sufficient explanation for his initial statement that he didn't know where to because when the immigration judge asked him follow-up questions, he did not actually answer the follow-up questions. So for example, he first testified that he jumped the fence because no one was at the port of entry, but then later he testifies he didn't know where the port of entry was. So then the immigration judge sees that inconsistency and asks him, why did you say that you jumped the fence because no one was at the port of entry if you did not know where the port of entry was? You can see how that could be all in the framing of the question. I mean, so, but to use that as the basis for discounting or that as another factor, do you see that's a little bit on the weaker side in terms of then jumping to the conclusion that, oh, therefore he's malingering here? Perhaps if that were the only factor that were considered in this case. However, that is just one of many factors that was considered in the totality of the circumstances for this case. Also, it is, you know, it is said that judges are to take a common sense approach to making adverse credibility findings. And of course, you know, one that comports with due process. And here it's too, there are too many similarities to ignore the fact that in one, one person's declaration has similar facts to 20 other people's declarations. It's something that the immigration judge, the agency could not ignore. Even in other cases in this circuit, for example, Dawood v. Garland. And then as I mentioned, Singh v. Garland earlier, there was just one declaration that was similar to the applicant's declaration. In the other Singh v. Garland case, there were three other declarations that were similar to. Can I ask, are there any cases in which the similarities that form the basis for adverse credibility only rested on factual similarities and not descriptions of incidents themselves? Yes, Your Honor. That is the Singh v. Garland case number. Do you have the site for that? Yes. Number 22-447. And in Westlaw, it's 2023 WL3335902. And that is an unpublished ninth circuit decision from May of this year. And here the court stated that, you know, in that case, all four petitioners described two attacks in common. The first involving kicking and slapping by four people while the petitioner was hanging man party posters and ending when people from nearby homes came to the rescue, similar to the facts here. The second involving a beating with sticks while the petitioner was going home after a wedding orchestrated by the man party and ending when farmers working in nearby fields came to the rescue, similar here. I mean, can I, so this kicking and slapping. So this, the government's categories here, one of them is opposing party attempts to recruit. That's one category. Respondent declines. That's another one. Respondent then punched, kicked, threatened. How many more ways of harming someone might there be? I guess, you know, you could say they're shot or something else, but when you start to group together different categories of ways that violence could be bestowed on someone, why should we take that as this is really specific and similar to something else? Why is that specific and not just general and nondescriptive? Because that taken together with the totality of the circumstances, it's not just that this is a case where multiple people are saying that they've been attacked, but they're saying they've been attacked the exact same numbers of times doing the exact same types of activities. Doing, see how that could happen, though, could you? Yes, yes, indeed. And even the agency here acknowledged that the immigration judge acknowledged that in his decision that it's possible that there would be similarities between applicants from the same country, from the same area. Let me just say this. We see a lot of immigration cases. It is not unusual to see from all different countries descriptions of two or three attacks, right? People may not want to stick around for seven or eight attacks before they finally leave the country. So for me, at least, it's a little bit hard to assign so much weight to the fact that this happened to be two attacks. It is just, you know, the government puts together 20 declarations from unknown persons, and it happens to be two attacks. I just, I don't know what to make of whether there's seeming weight to that. Conversely, if you have a Ming-Chi-Yi situation where you have literal copying of different language from different affidavits, maybe from brothers, same lawyer or something else, at least you could start to ground a possible analysis, and this could be suspicious. Do you see that distinction? I, you know, I know you've emphasized the two attacks. I just wanted to ask you to comment on that, for example. Yes, Your Honor. It's not just that there were two attacks, but also the, what happened during each of the two attacks. It's the same thing happening. It's during, you know, hanging up posters for the first attack, the second attack, it's when they're returning from a political event or a prayer meeting. It's not just the number of the attacks, but also the surrounding circumstances around these attacks, the totality of the circumstances. And what is also important to note here is that it has to be allowed, or the agency has to be allowed to consider factual similarities, because otherwise that would create, that would create a, excuse me, that would create a policy where potential fraudsters could use the same canned story with the same type of facts, as long as it didn't have the same typographical errors as their, as someone else who's using the same story. Let me, let me ask this. Suppose you had a person who really did experience this stuff, and is telling the truth, or hypothetical person, and they were attacked before for their man party beliefs, you know, two times. The police didn't do anything to help because the governing party would, would, would perhaps retaliate against the police. And they face the exact same scenario where all these declarations have other people similarly situated. What could that person do to demonstrate that they're telling the truth, despite these similarities? Is that, is it possible that you could have someone actually telling the truth and experiencing many or most of these things? What would they do in that circumstance in order to try to prove to the IJ that they're telling the truth? They would provide a truthful explanation of the, the, the similarities in, of their case and the other cases. But all I could say is, I only know what I know. I know what happened to me. I don't know what happened to other people. All I can tell you is, this is what happened to me. And if that's the only basis that the IJ needs to say, I don't believe you, your asylum claim is denied, doesn't that present some real questions about whether this is being properly applied? If the IJ were allowed to do only that, yes. However, the IJ is not allowed to just say, oh, I don't believe you, it's denied. That is why there are the three steps in the matter of RKK framework. And, you know, especially with giving the petitioner a reasonable opportunity to respond. And then also the totality of the circumstances. But I'm asking how, how could they, so I know they've articulated a reasonable opportunity to respond, but I guess I'm asking you, how, what could they do to respond to meaningfully challenge the IJ's perception that these are too similar? It would depend on the facts of the case. And it would depend on what the petitioner's experience in that case was. So I cannot necessarily speak to exactly what the petitioner would be able to say in that scenario. But as you have mentioned, there are other cases that have similar facts where the court did find past persecution. So it is possible for some people with these similar facts to demonstrate past persecution and not be subject to an adverse credibility determination. However, in some of these other cases where, in addition to these circumstances, they also testified in a way that was not credible or also in their evidence that they submitted, it is not corroborating their claim or explaining the various similarities. In those cases, then that is where the adverse determination credibility would be upheld. And it would comport with due process. And something else to, well, I see that I, I believe I'm out of time. I'm over my time. But your honors, to, to summarize, as, as your honors have identified, petitioners did not, petitioner did not raise any due process challenges to the agency or even before this court. Therefore, that issue is unexhausted and waived. There is also an alternative internal relocation finding in this case. So that is another dispositive ground on which the petition could be denied, even if the court did not address the adverse credibility determination here. And again, this court has just this year upheld an used the matter of RKK, where there were only factual similarities, not typographical and grammatical similarities. So this has been done before by this very court. And the court found that it did indeed comport with due process, because that is what the matter of RKK framework does. It allows the agency to have a cautious eye for both upholding the integrity of asylum proceedings and identifying when there are indicators of possible fraud, while also giving applicants their due process rights to have meaningful notice, reasonable opportunity to respond, and for them to have a full and fair hearing, because all of their evidence was considered together in the totality of the circumstances. And your honors, with that, the respondent requests that the petition for review is denied. Thank you, your honors. Thank you. Ms. Jacobs, we'll give you a minute to respond, please. A minute? Darn. Well, gosh, I've really got to focus. I had so many things to tell you. The case that government was referring to most recently decided by the Ninth Circuit actually was not decided solely on RKK. It also did not reach due process considerations at all. There are multiple basis for the adverse credibility determination, including, goodness, inconsistencies, non-responsive, inability to corroborate. The facts were significantly different. The decision was unpublished, presumably for a reason. It seems a little uneasy that you would say they didn't reach the due process considerations when the issue was not raised, as it wasn't raised here. And so, therefore, I don't think that's a place you ought to go. Your honor, I'm not meaning to criticize. I'm just pointing out that the decision was not decided. And so when that decision was reached, it has not precluded a due process related finding. That would not be in conflict. So going to the instant case, the government raised the evasive testimony finding. This finding is not supported by substantial evidence. As you were discussing briefly, there are some concerns about even whether this could have been non-responsive or not. Additionally, in the Ninth Circuit, discrepancies that can't be viewed as attempts to enhance the claim generally have little impact on credibility. And so if that were the only factor of an adverse credibility determination, it wouldn't be upheld. I could never see it being upheld. And since that is the only incredibly minor factor, combined with this RKK use, which is improper in this case and probably improper generally, this case absolutely has to be reversed and petitioner should be granted the asylum he deserves. The RKK actually addressed the how to demonstrate when someone's telling the truth. They talked about where additional details are provided that didn't necessarily need to be provided. And in those cases where there are additional details that are exactly the same, that's when RKK found. But here, the additional details provided by petitioner are considerable. He talked about his father and his history and how he got involved. And he provided many additional details not necessary to establishing his claim. RKK established three factors. I'll close here. I'm sorry. I'm sorry. RKK stated three factors which are required for this procedural fairness. And the second is a reasonable opportunity to explain, which the way government's been using RKK is impossible. The declarations are redacted. We have no opportunity to cross, opportunity to fully examine the witness. How is the petitioner well positioned to explain why these similarities and differences may occur between his declaration and some unknown number? Are you just saying you wouldn't have known what to say to explain? Or what are you saying? I'm saying that the petitioner, in order to be similarly situated to the government, to argue that, no, these are different declarations. This is, my story is different. This is why, in order to be able to say, here's why they seem similar, you need to see the entire declaration. If you know what the story is, and you know what the government is suggesting, then you should know what, how yours is different without having to go through all the other affidavits. We'll have a, we'll have a hearing that'll have 411 applicants in there. Come on, come up with a story. You're having an opportunity. And so many asylum applicants from many parts of the world are undereducated. Many of them, I mean, in this region of the world, many of them are farmers. Many of them are not positioned. I mean, they can't have the legal argument that I'm having with you. But so if the answer, my story is true, and I don't know why they're telling a story that's similar to mine. You know, you can't distinguish. You can't talk about, well, they're from the same town as me. Well, you know, this happened around the same time as me because we have the dates. You know, everything's redacted. They're not positioned in a way where they can reasonably defend themselves. And to throw out all asylum applicants where there are some factual similarities in the narrative, that risks throwing out an endless number of asylum applicants. It's, as you pointed out, there's only so many times you'll put up with persecution before you flee. One, maybe you think they're joking. Two, maybe it's time to go. Thank you for your time. Thank you, counsel, for both your arguments. It was very helpful and the matter will stand admitted.
judges: SMITH, SANCHEZ, MENDOZA